STATE OF NEBRASKA, APPELLEE, V. TRAVIS ALFORD, APPELLANT.
578 N.W. 2d 885

Filed May 5, 1998.    No. A-97-1031.

Paul W. Snyder, of The Van Steenberg Firm, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, IRWIN, and MUES, Judges.

MUES, Judge.

## INTRODUCTION

After pleading guilty or no contest to three Class I misdemeanors, Travis Alford was sentenced by the district court to concurrent indeterminate sentences in the county jail. He appeals, arguing that the district court was without authority to impose the indeterminate sentences and that the presentence investigation report contained improper information which was considered by the trial court. We agree that the district court was without authority to sentence Alford to indeterminate sentences in the county jail, and thus, we remand for resentencing.

## STATEMENT OF FACTS

On May 22, 1997, Alford was charged with four counts of first degree sexual assault, a Class II felony, each punishable by 1 to 50 years' incarceration. See Neb. Rev. Stat. §§ 28-319 and 28-105 (Reissue 1995). On July 24, 1997, as part of a plea agreement, Alford pled no contest to two counts of third degree sexual assault, a Class I misdemeanor, see Neb. Rev. Stat. § 28-320 (Reissue 1995), and guilty to one count of third degree assault, also a Class I misdemeanor, see Neb. Rev. Stat. § 28-310 (Reissue 1995). After a presentence investigation, the trial court sentenced Alford to 3 to 8 months in the county jail on each count, to be served concurrently. Alford appeals, alleging that the court was without authority to sentence him to indeterminate sentences in the county jail.

## ASSIGNMENTS OF ERROR

Alford's assignments of error allege that the district court erred (1) in sentencing him to indeterminate sentences in county jail, (2) in overruling his motion to strike and his objections to the contents of the presentence investigation report, and (3) in imposing excessive sentences.

## STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. An abuse of discretion takes place when the sentencing

court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997).

## DISCUSSION
*Indeterminate Sentences to County Jail.*

In Nebraska, "[t]he general rule is that an indeterminate sentence is insufficient and invalid unless authorized by statute. That general rule rests upon the proposition that indeterminate sentences were not authorized at common law and may not be pronounced without specific legislative sanction." *State v. Laravie*, 192 Neb. 625, 628, 223 N.W.2d 435, 437 (1974). Thus, unless the district court was authorized by statute to sentence Alford to indeterminate sentences of 3 to 8 months' incarceration, the sentences are insufficient and invalid.

Alford alleges that the trial court abused its discretion in sentencing him to indeterminate sentences in the county jail, because a county jail has no mechanisms for dealing with an indeterminate sentence as are provided for parole eligibility in state institutions under Neb. Rev. Stat. § 83-1,106 et seq. (Reissue 1994 & Cum. Supp. 1996), and thus, there is no statutory procedure to determine the lengths of his sentences. The State concedes that an indeterminate sentence to a county jail is not controlled by § 83-1,110 (providing every committed offender parole eligibility when offender has served one-half minimum term of sentence), because Alford is not a "committed offender" as defined in Neb. Rev. Stat. § 83-170 (Reissue 1994) (committed offender means any person who, under any provision of law, is sentenced to facility operated by Department of Correctional Services). Alford was sentenced to three concurrent sentences of 3 to 8 months in the Scotts Bluff County Jail. He is not a committed offender under § 83-170, and thus, his release and parole eligibility are not controlled by § 83-1,106 et seq.

However, the State argues that Neb. Rev. Stat. § 29-2204 (Reissue 1995) expressly authorized the sentences imposed here. Section 29-2204 provides in pertinent part:

> (1) Except when a term of life is required by law, in imposing an indeterminate sentence upon an offender the court shall:

(a) Fix the minimum and maximum limits of the sentence to be served within the limits provided by law . . . .

(b) Advise the offender on the record the time the offender will serve on his or her minimum term before attaining parole eligibility assuming that no good time for which the offender will be eligible is lost; and

(c) Advise the offender on the record the time the offender will serve on his or her maximum term before attaining mandatory release assuming that no good time for which the offender will be eligible is lost.

Section 29-2204 contains no express prohibition against sentencing a misdemeanant to an indeterminate sentence in county jail. A predecessor to § 29-2204, Neb. Rev. Stat. § 83-1,105 (Reissue 1976), was addressed by the Nebraska Supreme Court in *State v. Johnson*, 209 Neb. 308, 307 N.W.2d 525 (1981). In that case, the defendant was convicted of two counts of misdemeanor issuing a bad check. He was sentenced to 6 months to 1 year in an institution under the jurisdiction of the Department of Correctional Services on each count, to be served consecutively. The Supreme Court, in addressing Johnson's claim that his sentence was excessive, found that § 83-1,105 applied to his sentence.

We now believe it appropriate to declare that where an individual is convicted of a misdemeanor and given an indeterminate sentence which is to be served in an institution under the jurisdiction of the Department of Correctional Services, the provisions of § 83-1,105 should apply. We emphasize, however, that the rule applies in only those misdemeanor cases in which the defendant has been given an indeterminate sentence and ordered to serve the indeterminate sentence in an institution under the jurisdiction of the Department of Correctional Services.

209 Neb. at 309, 307 N.W.2d at 526.

The Supreme Court in *Johnson* then modified the sentences because they transgressed the provision in § 83-1,105 that the minimum sentence be not more than one-third of the maximum term. Section 83-1,105 was repealed by 1993 Neb. Laws, L.B. 529, and its indeterminate sentencing provisions now appear in § 29-2204 with some changes not particularly important to the

issue addressed here. *Johnson* did not expressly address the issue of whether a court was authorized by § 83-1,105 to sentence those convicted of misdemeanors to indeterminate sentences; rather, it held that the "minimum-maximum" provision of § 83-1,105 applied to such sentences if they were to be served in a state institution under the control of the Department of Correctional Services. Certainly, *Johnson* can be read as recognizing, if not implicitly holding, that § 83-1,105 authorized indeterminate sentences for misdemeanors if the sentences were to be served in a facility controlled by the Department of Correctional Services.

As stated, § 29-2204, the successor to § 83-1,105, does not expressly limit indeterminate sentencing to inmates convicted of felonies or those sentenced to state facilities. But Alford argues there are no statutory personnel or guidelines to administer indeterminate sentences in county facilities, and specifically, that there is no parole board available to determine if a county jail inmate is ready to be returned to society. The State does not challenge this argument but merely suggests that "[t]he county perhaps would like the flexibility to experiment with its own version of parole . . . ." Brief for appellee at 4.

In the instant case, the trial court sentenced Alford "to not less than three (3) months nor more than eight (8) months in the Scotts Bluff County Jail" and explained that the sentences would run concurrently. It continued,

> [W]hen you are admitted into the County Jail, the jail personnel will explain to you the policies and rules relative to "good time," and I am not quite sure what the Scotts Bluff County Jail rules are in that regard, but I am sure, no doubt, you can earn good time.

Nowhere on the record did the trial court explain the amount of time Alford would have to serve on his minimum sentence before attaining parole eligibility or the amount of time he would have to serve on his maximum term before attaining mandatory release as required for truth in sentencing. See § 29-2204. Of course, since the policies and rules relative to good time reductions on minimum and maximum terms were not known to the court, it was not possible for it to comply with the truth in sentencing provisions, and the record before us con-

tains no indication that jail rules pertaining to how good time is credited to minimum and maximum sentences even exist, let alone what those rules are and how they are enforced.

Neb. Rev. Stat. § 47-501 et seq. (Reissue 1993) provide in pertinent part that the county board of corrections or county sheriff is responsible for implementing sentence reductions and credits for county jail inmates. A county inmate shall have his or her term reduced by 7 days for each 14 consecutive days that he or she has not committed any breach of discipline or violation of jail regulations. See § 47-502. However, we find no guidance in this statutory scheme for determining whether the sentence reduction is to be applied to the minimum or maximum term of an indeterminate sentence. It is not reasonable to construe these statutes as requiring the county board of corrections or the county sheriff to implement sentence reduction for indeterminate sentences when the statutes give no guidance on how to accomplish this goal. And, of course, with no means to administer parole, the minimum-maximum dichotomy makes no sense anyway.

We believe the trial court's inability to explain the minimum and maximum amounts of time which Alford would have to serve before being released accentuates the issue rather clearly. The judge's inability to comply with the legislative directive for truth in sentencing under § 29-2204 clearly militates against the view that indeterminate sentences to county jail were intended to be authorized by § 29-2204.

█ As stated, the State argues that perhaps Scotts Bluff County would like to experiment with its own version of parole or release guidelines. Perhaps it would. Perhaps it would not. We find it troublesome that the sentences were imposed here without determining what Scotts Bluff County had done in that regard, if anything. Even were we to assume that the county was at liberty to create its own special parole system tailored just for that county, a matter we do not decide, its failure to do so would render Alford's *indeterminate* sentence "undeterminable." A sentence of imprisonment should be sufficiently certain so that in and of itself it advises the accused and those charged with its execution of its duration. *State v. Bensing*, 249 Neb. 900, 547 N.W.2d 464 (1996).

In *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996), the defendant was convicted of having been a minor in possession of alcohol and sentenced to 10 days in the county jail. The lower court further ordered that he be awarded a "good time" reduction of a day for a day on his sentence. In construing § 47-502 (which credits good time of 7 days for each 14 days spent in city or county jail), the Nebraska Supreme Court held that the lower court erred in sentencing the defendant. The court explained:

> [I]nmates committed to the state prison system serve longer sentences for more serious crimes and receive the benefit of many rehabilitation programs available in the state system. . . . State prison inmates also may receive maximum and minimum terms. . . . Maximum terms are used to determine discharge dates, and minimum terms are used to determine parole eligibility dates. . . . The sentence reduction provided for in § 83-1,107 applies to both terms. None of this applies to city and county jail inmates, who serve shorter sentences for less serious crimes. . . . They are ineligible for parole and have very limited access to rehabilitation programs.

250 Neb. at 322, 549 N.W.2d at 164. Based on the foregoing, the court concluded that city and county jail inmates are not situated similarly to state prison inmates for the purposes of awarding good time. The dissimilarity is seen again in Neb. Rev. Stat. § 47-401 (Reissue 1993), which allows a county inmate to seek permission to leave a jail facility to seek employment; to work; to conduct his or her own business needs, including attending to the needs of his or her family; to attend school; to seek medical treatment; and for serious illness or death in his or her immediate family. Similar flexibility in sentencing is not available to inmates in state facilities.

In sum, it is clear that Nebraska generally affords different treatment to inmates confined in city and county facilities from that afforded to those confined to state facilities under the Department of Correctional Services. In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996). We con-

clude that § 29-2204 does not authorize the imposition of an indeterminate sentence to a facility outside the jurisdiction of the Department of Correctional Services. One of the circumstances which renders a sentence void is that the court lacked a legal basis to impose it. A void sentence is no sentence. However, an indeterminate sentence imposed for a crime, where not authorized by statute, is erroneous but not void. *State v. Martin*, 246 Neb. 896, 524 N.W.2d 58 (1994). Alford's concurrent sentences of 3 to 8 months in the Scotts Bluff County Jail were erroneous. Therefore, we remand this cause for resentencing.

*Presentence Investigation Report.*

Alford argues that the presentence investigation report contained hearsay reports of alleged victims concerning conduct that was never charged and that such information denies him the right to confront his accusers. The presentence investigation report contains police reports concerning interviews with six alleged victims of sexual assaults by Alford: A.R., P.M., L.P., Y.G., S.B., and A.K. It also contains references to harassing telephone calls to A.R. which allegedly were made by Alford or made on his behalf. Alford objects to all references to L.P., S.B., and A.K. and the telephone calls because he did not plead to any of these attacks and there is no proof that the telephone calls were made by him. While his objections and motion to strike were overruled, the judge told him that he would "only take into consideration those portions of the report that apply specifically to [A.R.], [P.M.] and [Y.G.], and I put no weight whatsoever on the fact that telephone calls were made."

A sentencing court has broad discretion as to the source and type of evidence or information that it may use in determining the kind and extent of the punishment imposed within the limits fixed by statute. *State v. Meehan*, 6 Neb. App. 616, 576 N.W.2d 483 (1998). See, also, *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). The sentencing phase is separate and apart from the trial phase, and the traditional rules of evidence may be relaxed following a conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence. *Id.* In the proceeding for determination of sentence, evidence may be presented as to any matter that the court deems

relevant to sentence. *Id.* Reliance upon hearsay information in a presentence investigation is not inappropriate. *State v. Ritsch*, 232 Neb. 407, 440 N.W.2d 689 (1989). A sentencing court in noncapital cases may consider a defendant's unadjudicated misconduct in determining an appropriate sentence. *State v. Meehan, supra.*

Alford had an opportunity to review the presentence investigation report and objected to the hearsay it contained. The trial court judge said that he would not rely on this information. This assignment of error is without merit.

*Excessive Sentences.*

A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997). Alford was convicted of three separate crimes, each carrying a maximum sentence of 1 year's imprisonment. See, Neb. Rev. Stat. § 28-106 (Reissue 1995); § 28-310; § 28-320. In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, the motivation for the offense, the nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997).

Alford argues that he is a young man with no prior record and that since none of his crimes involved serious physical bodily injury, he should have received probation rather than a jail sentence. Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, and a judgment denying probation will be upheld unless the trial court abuses its discretion. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992). The officer who conducted the presentence investigation recommended that intensive supervision probation not be considered because of the aggravating circumstances in this case. Alford is an 18-year-old, single Native American male with no dependents. At the time of sentencing, he had completed the eleventh grade and was attending school in South Dakota. He was employed at a fast-food restaurant, earning $4.75 per hour, and received a character reference from his

assistant manager. The presentence investigation report includes character references from several of Alford's teachers and coaches, as well as his foster parents. It also contains letters from the victims and their parents.

The incidents which led to Alford's convictions involved forced or attempted forced sexual assaults by Alford on three teenage girls, two of which involved sexual penetration. They were violent acts by any definition of the word. After reviewing the facts and circumstances of these convictions, especially the fact that they involved random attacks against unrelated victims over the course of several months, it is clear that the trial court did not abuse its discretion in refusing to grant probation. Since we are remanding for resentencing, this assignment of error requires no further discussion.

## CONCLUSION

The district court was without authority to sentence Alford to indeterminate sentences in a county facility. As such, we remand for resentencing.

REMANDED FOR RESENTENCING.